```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

GLOBAL TEL*LINK CORPORATION,
a Delaware corporation,

                Plaintiff,

vs.                                   Case No. 2:09-cv-397-FtM-29SPC

MICHAEL J. SCOTT, in his official
capacity as Sheriff of Lee County;
LEE COUNTY SHERIFF'S OFFICE, a
political subdivision of the State
of Florida; DSI DIGITAL SOLUTIONS,
INC., a Pennsylvania corporation;
and ITI INMATE TELEPHONE, INC., a
Pennsylvania corporation,

                Defendants.[1]
_____

## **OPINION AND ORDER**

This matter comes before the Court on plaintiff's Motion for Preliminary Injunction (Doc. #2) and plaintiff's Emergency Amended Motion for Preliminary Injunction (Doc. #12). Only defendant DSI Digital Solutions (DSI) filed a Response (Doc. #38), along with a Request for Oral Argument (Doc. #39) and the supporting Declarations of Colonel Michael Waite, Ryan Westrick and Rory Miller (Docs. ## 35-37, respectively). Also before the Court is plaintiff's Motion to Strike Affidavits Filed by Defendant, Lee County Sheriff's Office or in the Alternative Motion for Leave to

---

[1]The caption of the Second Amended Verified Complaint (Doc. #42) fails to identify all the defendants. The Clerk of the Court shall enter the above caption for future use, and all parties shall utilize this caption from now on.

Present All Pertinent Material and Incorporated Memorandum of Law (Doc. #29)

**I.**

According to the Second Amended Complaint (Doc. #42), plaintiff Global Tel*Link Corporation (plaintiff of "Global") provides telecommunications equipment and services to the Lee County Jail pursuant to an Inmate Telephone Services Agreement (the "Agreement") executed on June 21, 2001, with the Lee County Sheriff's Office (the "Sheriff's Office"). The Agreement, which had an initial term of four years, contained the following self-executing renewal provision:

> This Agreement shall be renewed for two (2) additional four (4) year period(s) after the original term, unless either party provides written notice of its intention not to renew this Agreement at least ninety (90) days prior to the expiration of the original or any renewal term. Each notice will be sent to the address set forth in Section 10.

(Doc. #42, ¶19.) The referenced notice provision specifies that any notice provided to Global "must be in writing, and must be given by personally delivering or mailing the same by registered or certified mail, return receipt requested," to Global's office at 2609 Cameron Street, in Mobile, Alabama (Doc. #42, ¶20).

In June 2005, the Agreement automatically renewed itself for another four-year term pursuant to the renewal provision and as set forth in an Addendum to the Agreement executed by the parties on April 6, 2005 (id. at ¶¶ 22-23; Doc. #42-3).

The parties dispute whether the Agreement automatically renewed itself again in June 2009, or whether the Agreement was properly terminated prior to renewal. Plaintiff claims that the Sheriff's Office provided untimely and improper notice of termination of the Agreement and prematurely engaged the services of competitors, DSI and ITI Inmate Telephone, Inc. ("ITI"). Plaintiff also alleges that due to the Sheriff's Office's untimely and improper notice of termination, the Agreement was automatically renewed for a final four-year term.

Global's eight-count Second Amended Complaint (Doc. #42) against the Sheriff's Office, Sheriff Michael J. Scott ("Sheriff Scott"), DSI and ITI seeks specific performance of the Agreement and of the alternative dispute resolution provision of the Agreement by the Sheriff's Office (Count I) and injunctive relief and damages against DSI/ITI for tortious interference with a contractual relationship, unfair and deceptive trade practices, unfair competition, and conversion (Counts II through VIII). In an Emergency Amended Motion for Preliminary Injunction (Doc. #12), plaintiff seeks a preliminary injunction as follows:

> a. Enjoining the [] Sheriff's Office, to engage in arbitration in accordance with the alternative dispute resolution procedures set forth in the parties' Inmate Telephone Service Agreement pending [Global's] request for a preliminary injunction in arbitration and the arbitrator's ruling on that request;
>
> b. Enjoining and restraining the [] Sheriff's Office, and DSI from removing the telecommunications software, hard drives, hardware, routers and other [Global] equipment at the Facilities pending [Global's] request

for a preliminary injunction in arbitration and the arbitrator's ruling on that request;

c. Enjoining [] the Sheriff's Office, and DSI to require them to remove DSI's telecommunications software, hard drives, hardware, routers and other equipment from the Facilities pending [Global's] request for a preliminary injunction in arbitration and the arbitrator's ruling on that request;

d. Enjoining the [] Sheriff's Office, to permit [Global] to provide service under the parties' Inmate Telephone Services Agreement at the Facilities pending the conclusion of arbitration pending [Global's] request for a preliminary injunction in arbitration and the arbitrator's ruling on that request;

e. Enjoining and restraining [] the Sheriff's Office, and DSI from, directly or indirectly, disclosing or requesting anyone to disclose any confidential information of [Global];

f. Enjoining and restraining [] the Sheriff's Office, and DSI from, directly or indirectly from using in any way or aiding anyone to use any information regarding any accounts or customers [Global] serviced or had contact with through the Inmate Telephone Services Agreement at the Facilities pending [Global's] requesting for a preliminary injunction in arbitration and the arbitrator's ruling on that request;

g. Enjoining and restraining [] DSI from diverting or attempting to divert any customer of [Global] using the services offered by [Global] through the Inmate Telephone Services Agreement at the Facilities.

h. Awarding [Global] such other and further relief as this Court may deem just and proper.

(Doc. #12, pp. 3-4.) For the reasons set forth below, the Court finds that plaintiff's request for preliminary injunctive relief should be granted only as to plaintiff's request for specific performance of the alternative dispute resolution provision of the Agreement (paragraph 1.a.).

**II.**

In the Eleventh Circuit, the issuance of "a preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion" on each of four prerequisites. E.g., Canal Auth. of Fla. v. Callaway, 489 F.2d 567, 573 (5th Cir. 1974)).[2] See also McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998). The party seeking a preliminary injunction must demonstrate: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered absent an injunction; (3) that the injury to movant outweighs the injury the proposed injunction would cause to the opposing party; and (4) that the proposed injunction would serve the public interest. E.g., Johnston v. Tampa Sports Auth., 530 F.3d 1320, 1325 (11th Cir. 2008); SunTrust Bank v. Houghton Mifflin Co., 268 F.3d 1257, 1265 (11th Cir. 2001). The burden of persuasion for each of the four requirements is upon the movant. Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).

A federal court sitting in diversity jurisdiction applies the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result. Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar. Co., 157 F.3d 843, 844 (11th

---

[2]In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

-5-

Cir. 1998). Here, the Agreement specifies that Florida law governs the contract.

**III.**

In Count I of the Second Amended Complaint, plaintiff asserts a claim for specific performance of the alternative dispute resolution provision. Count I states that plaintiff wishes to seek specific performance of the Agreement before an arbitrator, and seeks maintenance of the *status quo* pending such arbitration. Accordingly, plaintiff seeks to enjoin the Sheriff's Office to engage in arbitration pursuant to the alternative dispute resolution provision of the Agreement.

**A. Specific Performance of the Alternative Dispute Resolution Provision of the Agreement**

**(1) Substantial Likelihood of Success on the Merits**

There is a "strong federal preference for arbitration of disputes," which should be enforced where possible. <u>Musnick v. King Motor Co.</u>, 325 F.3d 1255, 1258 (11th Cir. 2003). Despite the liberal federal policy favoring arbitration, nothing in the Federal Arbitration Act authorizes a court to compel arbitration if there is no agreement to arbitrate. <u>EEOC v. Waffle House, Inc.</u>, 534 U.S. 279, 289, 293 (2002). Accordingly, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute. . . . Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability."

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). When deciding whether the parties have agreed to arbitrate certain matters, the court applies ordinary state-law principles that govern the formation of contracts. American Express Fin. Advisors v. Makarewicz, 122 F.3d 936, 940 (11th Cir. 1997). "[A]ny doubt concerning the scope of the arbitration clause should be resolved in favor of arbitration." Hirshenson v. Spaccio, 800 So. 2d 670, 674 (Fla. 5th DCA 2001).

Here, the Agreement contains a clear and unambiguous dispute resolution provision specifying that, as between Global and the Sheriff's Office, "any dispute or claims arising under this Agreement shall be resolved through alternative dispute resolution . . . . Initially, the parties shall engage in non-binding mediation . . . . In the event the dispute or claim is not satisfactorily resolved through mediation within 90 (ninety) days of notice . . . the parties agree to submit such dispute or claim to binding arbitration . . . ." (Doc. #42-2, ¶20.) Neither party has disputed the existence or validity of this contractual alternative dispute resolution provision.[3] The Court finds that

---

[3]While the Sheriff's Office has not filed a response on the issue, in an electronic mail message to counsel for Global, Barry Hillmyer of the Sheriff's Office wrote: "I suspect the court will order the case to mediation, per the contract. Is that what [Global] wants, mediation? I spoke with the powers that be in this matter and all agreed that [the Sheriff's Office] wants the DSI system. Therefore I believe we are talking dollars if it is deemed the contract was breached by failing to give proper notice. Therefore the mediation would be about dollars." (Doc. #42-9, p.
(continued...)

plaintiff has succeeded in establishing a substantial likelihood of success on the merits as to the request for specific performance of the alternative dispute resolution provision.

**(2) Substantial Threat of Irreparable Injury**

Even for a claims on which plaintiff shows a substantial likelihood of success on the merits, plaintiff must also establish a substantial threat of irreparable injury absent relief. Siegel, 234 F.3d at 1176. A movant's "success in establishing a likelihood it will prevail on the merits does not obviate the necessity to show irreparable harm." United States v. Lambert, 695 F.2d 536, 540 (11th Cir. 1983). "'[T]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.'" Sampson v. Murray, 415 U.S. 61, 88 (1974) (citing Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-07 (1959). "A showing of irreparable injury is the *sine qua non* of injunctive relief." Siegel, 234 F.3d at 1176 (quoting Northeastern Florida Chapter of Ass'n of General Contractors v. Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990) (internal quotations omitted), rev'd on other grounds, 997 F.2d 835 (11th Cir. 1993)). The asserted irreparable injury "must be neither remote nor speculative, but actual and imminent." Siegel, 234 F.3d at 1176 (quoting City of Jacksonville, 896 F.2d at 1285 (internal quotations omitted)). Further, because injunctions regulate future

---

³(...continued)
2.)

conduct, "a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate – as opposed to a merely conjectural or hypothetical – threat of future injury." Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994) (citing Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (emphasis in original)). Upon review, the Court finds that plaintiff has met its burden of establishing a substantial threat of irreparable harm or injury absent initiation of the alternative dispute resolution process set forth in the Agreement.

**(3) Balance of Potential Injuries**

In deciding whether injunctive relief is appropriate, the third task a trial court must undertake is to balance the hardships to the respective parties. Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc., 303 F.3d 1242, 1247 (11th Cir. 2002). Plaintiff must establish that the threatened injury to it outweighs the harm the requested preliminary injunctive relief may cause to the defendant. Siegel, 234 F.3d at 1176. Here, the injury Global would suffer upon being denied the opportunity to engage in alternative dispute resolution, as set forth in the Agreement, clearly outweighs any potential harm to the Sheriff's Office arising from being forced to engage in alternative dispute resolution. The Court concludes that Global has satisfied its burden as to the third requirement.

**(4) Public Interest**

Neither party claims that mediation and arbitration would be against the public interest, though plaintiff claims that the Sheriff's Office has "expressed its view that mediation would be futile." (See Doc. #12, pp. 6-7.) The Court finds that under the facts in this case, plaintiff has established that enjoining the parties to engage in alternative dispute resolution, as contractually agreed by the parties in the Agreement, is in furtherance of the public interest. Accordingly, plaintiff's request for preliminary injunctive relief to enjoin the Sheriff's Office to participate in alternative dispute resolution pursuant to the Agreement is granted.

**B. Return to Initial *Status Quo* Pending Mediation and Arbitration**

In paragraphs 1.b. through 1.g. of the amended motion for preliminary injunction, plaintiff seeks to maintain the initial *status quo* (as circumstances stood prior to the purported breach and installment of DSI/ITI's equipment at the Facility) through the imposition of various other forms of injunctive relief upon the Sheriff's Office, pending arbitration. (Doc. #12, pp. 3-4.) The Court finds that plaintiff has not satisfied its burdens as to these requests.

Courts may "grant interim injunctive relief pending arbitration in order to preserve the *status quo*, but only if the parties' agreements contemplate such relief." Sprint Corp. v.

Telimagine, Inc., 923 So. 2d 525, 527 (Fla. 2d DCA 2005) (quoting Rath v. Network Mktg., L.C., 790 So. 2d 461, 465 (Fla. 4th DCA 2001), rev'd on other grounds, 805 So. 2d 72 (Fla. 4th DCA 2002)). In Rath, the court noted that "the parties' agreement in th[at] case did not contemplate the issuance of interim relief by the [] court pending the outcome of arbitration. Rather, it contemplated the issuance of such relief only through collateral proceedings to enforce arbitration awards in the [] courts [having] the authority to enjoin any violation of [the parties'] agreement." 790 So. 2d at 466 (internal quotations omitted); see also Sprint Corp., 923 So. 2d at 527. Here, the Agreement contains an alternative dispute resolution provision that provides, "Any judgment, decision or award by the arbitrators shall be final and binding on the parties and may be enforced in any court having jurisdiction over a party against whom any such judgment, decision or award is to be enforced." (Doc. #42-2, ¶20(b).) The Court interprets this language, as the state court did in Rath, "to mean that either party could seek such relief in the [] court, but only *after* a determination on the merits of the underlying dispute by the arbitrator. If the parties had intended that the agreement authorize interim injunctive relief pending arbitration to preserve the *status quo*, they should have put such language in the agreement." 790 So. 2d at 466 (emphasis in original). Accordingly, the plaintiff's request to maintain the former *status*

*quo* by, among other things, removing DSI/ITI's equipment and reinstating Global's equipment, and permitting Global to resume provision of telecommunications services, is denied.

In accordance with Section 3 of the Federal Arbitration Act,[4] the Court will stay the case as to the Sheriff's Office and Sheriff Scott pending alternative dispute resolution. Because the resolution may well have a substantial impact on the remaining defendants and issues in this case, the Court will also stay this entire case until notified of the results of the alternative dispute resolution.

**IV.**

**A. Substantial Likelihood of Success on the Merits**

   **(1) Tortious Interference with a Contractual Relationship**

In Count II of the Second Amended Complaint, plaintiff asserts a claim of tortious interference with a contractual relationship against DSI/ITI, and seeks the injunctive relief summarized above.[5] Under Florida law, the elements of a cause of action for tortious

---

[4] Section 3 of the Federal Arbitration Act provides: "the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."  9 U.S.C. § 3.

[5] In Count III, plaintiff asserts an alternative count of tortious interference with a contractual relationship against DSI/ITI, but seeks damages rather than injunctive relief.

interference with a contractual relationship are: (1) the existence of a contract, (2) the defendant's knowledge of the contract, (3) the defendant's intentional procurement of the contract's breach, (4) absence of any justification or privilege, and (5) damages resulting from the breach. Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290 (11th Cir. 1998) (citing Florida Tel. Corp. v. Essig, 468 So. 2d 543, 544 (Fla. 5th DCA 1985)). The parties only disagree as to the fulfillment of the third and fourth elements.

The essence of the parties' disputes depends upon the determination of whether the Sheriff's Office provided Global with proper and timely notice of termination (thereby causing the Agreement to expire) or whether the Sheriff's Office provided improper or untimely notice (thereby renewing the Agreement for a final four-year term). Based on a review of the Second Amended Complaint, the amended motion for preliminary injunction, DSI/ITI's Response and the Declarations, the Court finds that plaintiff has failed to establish a substantial likelihood of success as to the third and fourth elements of its claim of tortious interference with contractual relation against DSI/ITI.

**(2) Unfair and Deceptive Trade Practices**

In Count IV of the Second Amended Complaint, plaintiff asserts a claim of unfair and deceptive trade practices in violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), FLA.

STAT. § 501.201 et seq. (2009), against DSI/ITI.[6] The purpose of the FDUTPA is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202(2). See also Natural Answers, Inc. v. SmithKline Beecham Corp., 529 F.3d 1325 (11th Cir. 2008); Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. City First Mortg. Corp. v. Barton, 988 So. 2d 82, 86 (Fla. 4th DCA 2008) (quoting Rollins, 951 So. 2d at 869, review denied, 962 So. 2d 335 (Fla. 2007)). An "unfair practice" is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" PNR, Inc. v. Beacon Prop. Mgmt., 842 So. 2d 773, 777 (Fla. 2003) (quoting Samuels v. King Motor Co., 782 So. 2d 489, 499 (Fla. 2001)). A "deceptive act" occurs when there is a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." PNR, Inc., 842 So. 2d at 777 (quoting Millennium Communs. &

---

[6]In Count V, plaintiff asserts an alternative count of unfair and deceptive trade practices against DSI/ITI, but seeks damages rather than injunctive relief.

-14-

Fulfillment, Inc. v. Office of the AG, Dep't of Legal Affairs, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000)).

Plaintiff claims that DSI/ITI has "engaged in unfair, deceptive or unconscionable conduct by (i) negotiating with the Sheriff's Office for an agreement to obtain exclusive rights to provide inmate telephone services at the Facilities for the same period when it knew [Global] had such exclusive rights; and (ii) advertising to [Global's] customers that [DSI/ITI] will be providing inmate telephone services at the Facilities when, in fact, [Global] still has an enforceable Agreement in place to provide such services until 2013." (Doc. #42, ¶93.) Plaintiff asserts that the FDUTPA "consumer" should be defined as inmates and those wishing to receive telephone calls from inmates, while defendant asserts that the FDUTPA "consumer" should be defined as the Sheriff's Office.

The Court finds that regardless of which characterization of "consumer" is accepted, plaintiff has failed to provide facts or otherwise sufficiently bear its burden of proof by establishing that DSI/ITI engaged in actions that are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, or that they made representations, omissions, or engaged in practices that were likely to mislead reasonable consumers to their detriment. Thus, plaintiff has failed to establish a substantial likelihood of success as to its claim under FDUTPA as to DSI/ITI.

### (3) Common Law Unfair Competition

In Count VI of the Second Amended Complaint, plaintiff asserts a claim of common law unfair competition against DSI/ITI.[7] To prevail on a claim for unfair competition under Florida common law, plaintiff must establish (1) deceptive or fraudulent conduct of a competitor and (2) likelihood of consumer confusion. E.g., M.G.B. Homes v. Ameron Homes, 903 F.2d 1486, 1493-94 (11th Cir. 1990); Donald Frederick Evans & Assocs., Inc. v. Continental Homes, Inc., 785 F.2d 897, 914 (11th Cir. 1986); Stagg Shop of Miami, Inc. v. Moss, 120 So. 2d 39 (Fla. 1960).

As to the first element, plaintiff states in a conclusory fashion that DSI/ITI's conduct constitutes "deceptive and fraudulent conduct," and that DSI/ITI has "sought to fraudulently and deceptively cause [the Sheriff's Office] to replace [Global] as the inmate telephone services provider to the Facilities." (See Doc. #42, ¶105; Doc. #12, p. 11.) No adequate factual support is provided to meet its burden of proof.

As to the second element, the "likelihood of consumer confusion and passing off one's goods or services as those of another constitute the gravamen of the action" under Florida case law. M.G.B. Homes, 903 F.2d at 1494 (internal citations and quotations omitted). In support of the second element, plaintiff

---

[7]In Count VII, plaintiff asserts an alternative count of common law unfair competition against DSI/ITI, but seeks damages rather than injunctive relief.

asserts that DSI/ITI has created consumer confusion by advertising on the Sheriff's Office's website that it is accepting orders from existing Global customers to set up new accounts with DSI/ITI (see Doc. #42, ¶106). Plaintiff claims that such conduct is likely to cause consumer confusion because inmates within the Lee County Jail may mistakenly believe they are still receiving telephone services through Global when in actuality they are now placing their calls through DSI/ITI's system (see Doc. #42, ¶107). Plaintiff also claims customer confusion because DSI/ITI refuses to honor the prepaid credit purchased by Global customers, who are recipients of calls from inmates (id.). Global asserts that "[Global's] current customers may believe that they are still being served by [Global]" (Doc. #12, p. 11), that Global has received calls from these customers "complaining that their service was changed in the dead of night, without notice to them, and without [Global] being able to assist them" (id. at p. 3), and that Global's call center continues to "receive telephone calls on a daily basis from customers who are confused, frustrated and angry because [] they can no longer utilize their accounts and funds deposited with [Global]." (Doc. #31-2, ¶3.)

Defendant DSI/ITI asserts that the proper customers in question as to the "customer confusion" analysis are not the inmates and those who wish to receive calls from inmates--they have no choice as to which telecommunications provider they use--but rather, the Sheriff's Office. The Court need not resolve this

dispute at this time. Assuming the inmates are the consumers, the facts pled by plaintiff are more indicative of a lack of confusion rather than its presence. Based on a review of the Second Amended Complaint, the amended motion for preliminary injunction, DSI's Response and the Declarations in support of both parties, the Court finds that Global has failed to bear its burden of proof by establishing the elements of a claim of unfair competition under Florida common law.

**B. Remaining Preliminary Injunction Factors**

The Court concludes upon review that as to DSI/ITI, plaintiff has failed to establish a substantial likelihood of success on the merits on the claims of tortious interference with a contractual relationship, unfair and deceptive trade practices, and common law unfair competition.[8] As plaintiff has failed to meet its burden of establishing a substantial likelihood of success on the merits as to each of its claims, the Court finds it unnecessary to engage in the remainder of the preliminary injunction analysis as to DSI/ITI. Thus, plaintiff's request for injunctive relief as to DSI/ITI is denied.

**V.**

Also before the Court is plaintiff's Motion to Strike Affidavits Filed by Defendant, Lee County Sheriff's Office or in the Alternative Motion for Leave to Present All Pertinent Material

---

[8]While plaintiff also asserts a claim of conversion against DSI/ITI in Count VIII, in that count plaintiff seeks only damages.

and Incorporated Memorandum of Law (Doc. #29) filed on July 9, 2009.  Plaintiff asserts that the Notice of Filing (Doc. #22) attaching the Affidavits of Adam Mercer and Colonel Michael Waite, which was filed by the Sheriff's Office's in support of its Motion to Dismiss (Doc. #17), should be stricken from the docket as "improper at the motion to dismiss phase of these proceedings." (Doc. #29, p. 2.)  The Court notes that the underlying Motion to Dismiss (Doc. #17) was denied as moot pursuant to an Order (Doc. #41) entered by the magistrate judge on July 21, 2009. Accordingly, the Court will deny plaintiff's motion to strike as moot.

Accordingly, it is now

**ORDERED:**

1.  Plaintiff's Motion for Preliminary Injunction (Doc. #2) is **DENIED as moot** in light of plaintiff's filing of the Emergency Amended Motion for Preliminary Injunction (Doc. #12).

2.  Plaintiff's Emergency Amended Motion for Preliminary Injunction (Doc. #12) is **GRANTED as follows**: Defendant, LEE COUNTY SHERIFF'S OFFICE, their officers, agents, servants, employees, and attorneys, are hereby **ORDERED** to engage in alternative dispute resolution in accordance with the terms of the parties' Inmate Telephone Service Agreement.  The motion is otherwise **DENIED.**

3. Defendant DSI Digital Solutions' Request for Oral Argument (Doc. #39) is **DENIED.**

4. Plaintiff's Motion to Strike Affidavits (Doc. #29) is **DENIED as moot**.

5. Plaintiff's Motion for Expedited Discovery (Doc. #15) is **DENIED** without prejudice.

6. The case will be **STAYED** pending notification of the results of the alternative dispute process. The Clerk of the Court shall administratively close the case.

**DONE AND ORDERED** at Fort Myers, Florida, this __23rd__ day of July, 2009.

/s/ John E. Steele
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record